UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PAUL GRIBBEN,

      Petitioner,

v.                                                                          Case No. 5:18cv105-MCR-HTC

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Paul Gribben's ("Gribben")
amended petition for writ of habeas corpus under 28 U.S.C. § 2254.  ECF Doc. 4.
The matter was referred to the undersigned Magistrate Judge for report and
recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After
considering the Petition and the State's response (ECF Doc. 14) and allowing
Gribben an opportunity to submit a reply,[1] the undersigned recommends the Petition
be **DENIED** without an evidentiary hearing.

---

[1] The Court allowed two extensions of time for Gribben to submit a reply, ECF Docs. 17 & 19,
but Gribben did not file a reply and the time for doing so has passed.

Gribben's petition raises three grounds challenging a prison disciplinary action which resulted in a loss of sixty (60) days of gain time: (1) his constitutional rights to due process were violated when the hearing panel interpreted a prison rule as preventing it from relying upon an inmate's testimony to exonerate the inmate of a disciplinary report; (2) his constitutional rights to due process were violated when prison employees who were witnesses to a black eye he had after the incident failed to offer testimony on Gribben's behalf; and (3) his constitutional rights to due process were violated when the disciplinary hearing officials found him guilty of battery without considering evidence showing that the alleged victim struck at Gribben first. ECF Doc. 4. For the reasons set forth below, the undersigned finds that the state court's adjudication of these same claims was not contrary to clearly established federal law or based on an unreasonable application of the facts to the law. *See* 28 U.S.C. § 2254(d).

## I.    Background

In his grievance filed with Graceville Correctional Facility on January 28, 2015, Gribben set out his version of the events that led to his disciplinary action. ECF Doc. 14-1 at 8. On the morning of December 24, 2014, Gribben was brushing his teeth in his cell when his cellmate, William Artis, ordered him to fill up the cellmate's water cup. *Id.* Gribben refused, and the cellmate called Gribben a name

and then punched him in the eye. *Id.* Gribben "quickly ascertained" that his cellmate was too big to be fought in the cell, so Gribben left the cell and went into the day-room area of the housing unit. *Id.* The cellmate yelled that Gribben was going to get a knife (which Gribben denies) and announced that he wanted to fight Gribben in the cell. *Id.* Gribben then admits the following: "I waited a few minutes until the officers came into the housing unit and then I punched Artis. I only remember punching him once, but the video shows I punched him a few more times before Sgt. Epley sprayed me with pepper spray." *Id.* Gribben claims that as he was being escorted away by Sgt. Epley, Gribben told him that he had punched his cellmate because his cellmate had just punched him. *Id.* Gribben claims that Sgt. Epley then wrote him and his cellmate a disciplinary report for fighting. *Id.* Gribben also claimed that on December 26, 2014, he told Lt. Williams about why he, Gribben, had a black eye. *Id.*

Gribben claimed he received an initial hearing on "1/31/14" but, from context, he probably meant December 31, 2014. *Id.* At the hearing, the board reviewed the video of the incident, and not seeing any prior aggression or reaction by the cellmate on the video, "enhanced" the charges against Gribben to battery on an inmate. *Id.* Gribben claims the punch by his cellmate in the cell occurred "just minutes prior" to

Gribben punching the cellmate and was not caught on camera because it was in the cell, not the day-room area. *Id.* at 9.

On January 1, 2015, Sgt. Epley filled out a disciplinary report which stated the following:

> While feeding Quad 4 of Bravo Dorm, I was present in the front area of the Quad when I observed inmate Gribben striking inmate Artis … with closed fists in the head and upper torso area. At that time, I gave inmate Gribben several verbal orders to ease his actions to no avail. I then administered chemical agents to inmate Gribben to which he complied and ceased his actions.

ECF Doc. 14-1 at 5. The report also gave advance notice of a hearing set for January 5, 2015, and informed Gribben that he was being charged with "battery or attempted battery on an inmate." *Id.* Gribben was told that he could "make known any witnesses to the investigating officer" and that "the testimony of witnesses shall be presented by written statements." *Id.*

Gribben alleged that Lt. Williams, Mr. Taylor and Sgt. Webb had knowledge of his black eye and were asked to file written witness statements. ECF Doc. 14-1 at 9 & ECF Doc. 14-2 at 14. In their written statements, these individuals merely stated that they were not present when the incident occurred or did not recall the events; they did not discuss whether they observed Gribben with a black eye. ECF Doc. 14-2 at 18-21.

On January 8, 2015, the hearing board issued a written decision outlining the

evidence and reasoning upon which the disciplinary action was based:

> Based on the statement of facts where Sgt. Epley reported that he
> observed inmate striking inmate Artis repeatedly with closed fists in the
> head and upper torso area, based upon review of the identified tape or
> the capability of the particular taping equipment the tape requested does
> not provide evidence to support the inmate's claim.

ECF Doc. 14-1 at 7.  Gribben stated that after his hearing, the presiding officer told

him "he believed [his] version of events but that the team was finding [him] guilty

because a 'fight' entails mutual combat and the video, statement of facts in the D.R.

and my statement showed me punching inmate Artis and him not punching back and

that is not a 'fight' so it must be a 'battery.'" *Id.* at 9.  He was found guilty and lost

sixty (60) days of gain time.  *Id.* at 7.

Gribben exhausted his state remedies by filing a grievance, appealing the

denial of that grievance, and then filing a petition for mandamus in Florida state

court on June 15, 2015.  ECF Doc. 14-4 at 1-2.  The circuit court, citing the Supreme

Court's decisions in *Wolff* and *Hill*, denied the mandamus petition on January 29,

2016.  ECF Doc 14-4 at 1.  The First District Court of Appeal denied Gribben's

petition for writ of certiorari *per curiam* without written reasoning on November 9,

2016.[2]  ECF Doc 14-5 at 2.  The mandate was issued on December 6, 2016.  *Id.* at 1.  Gribben initiated the instant federal habeas action by delivering his original petition to prison mail officials on October 31, 2017.  ECF Doc. 1.[3]

## II.    Legal Analysis

### A.    Federal Review Under The Antiterrorism And Effective Death Penalty Act ("AEDPA")

The Eleventh Circuit, in *Medberry v. Crosby*, 351 F.3d 1049, 1053 (11th Cir. 2003), *cert. denied*, 541 U.S. 1032 (2004), determined that "a state prisoner may file a habeas corpus petition to challenge the loss of gain time as a result of state prison disciplinary proceeding that allegedly violates his due process rights under 28 U.S.C. § 2241, although such a petition is governed by the restrictions set forth at 28 U.S.C. § 2254." *Tedesco v. Sec'y for the Dep't of Corr.*, 190 F. App'x 752, 755-56 (11th Cir. 2006) (citing *Medberry*, 351 F.3d at 1054), cert. denied, 549 U.S. 1127, 127 S.Ct. 959, 166 L.Ed.2d 731 (2007).  Therefore, this Court may not grant relief unless the AEDPA parameters of review are satisfied.  See 28 U.S.C. § 2254; *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016).  The "AEDPA limits the scope of federal habeas review of state court

---

[2] Judges B.L. Thomas, Wetherell, and M.K. Thomas concurred.
[3] See *Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (Under the "prison mailbox rule," a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.).

judgments[.]"  *Pittman v. Sec'y, Fla. Dep't of Corr.*, 871 F.3d 1231, 1243 (11th Cir. 2017).  As such, AEDPA ensures that federal habeas relief is limited to extreme malfunctions, and not used as a means to attempt to correct state errors.  *Ledford*, 818 F.3d at 642 (quoting *Greene v. Fisher*, 565 U.S. 34 (2011)).

Thus, under AEDPA, a person in custody pursuant to the judgment of a state court shall not be granted habeas relief on a claim "that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or...was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court—not Supreme Court dicta, nor the opinions of this Court."  *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1293-94 (11th Cir. 2014).

As for the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Terry Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application"

clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts." *Id.* at 413. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). And "an 'unreasonable application of' [Supreme Court] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, ―― U.S. ――, 135 S.Ct. 1372, 1376 (2015) (per curiam) (quotation omitted). To overcome this substantial hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is "meant to be" a difficult standard to meet. *Id.* at 102; *Pittman*, 871 F.3d at 1243-44.

There is a presumption of correctness of a state court's factual findings, unless the presumption is rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard of proof is demanding, requiring that a claim be highly probable. *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1258 (11th Cir. 2013). Also,

the state court's determination will not be superseded if reasonable minds might disagree about the factual finding. *Brumfield v. Cain*, —— U.S. ——, 135 S.Ct. 2269, 2277 (2015). Also of note, "[t]his presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting *Bui v. Haley*, 321 F.3d 1304, 1312 (11th Cir. 2003)), *cert. denied,* 568 U.S. 1233 (2013).

## B.    Due Process Required In Prison Disciplinary Proceedings

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, "the full panoply of rights that are due a defendant in a criminal proceeding do not apply in a prison disciplinary proceeding." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Instead, *Wolff* instructs that where gain time credits are at stake in a prison disciplinary proceeding, inmates must receive only the following procedural protections: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action. *Id.* at 563-66.

Also, the Supreme Court instructs that the revocation of gain time credits satisfies minimal standards of procedural due process if "the findings of the prison

disciplinary board are supported by some evidence in the record." *Superintendent,*

*Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 453 (1985).  In determining

whether there is "some evidence" in the record to support the disciplinary decision,

the Court does not engage in a *de novo* review of the evidence:

> Ascertaining whether this standard is satisfied does not require
> examination of the entire record, independent assessment of the
> credibility of witnesses, or weighing of the evidence. Instead, the
> relevant question is whether there is any evidence in the record that
> could support the conclusion reached by the disciplinary board. We
> decline to adopt a more stringent evidentiary standard as a
> constitutional requirement. Prison disciplinary proceedings take place
> in a highly charged atmosphere, and prison administrators must often
> act swiftly on the basis of evidence that might be insufficient in less
> exigent circumstances. The fundamental fairness guaranteed by the
> Due Process Clause does not require courts to set aside decisions of
> prison administrators that have some basis in fact.

*Hill*, 472 U.S. at 455-56 (citations omitted).

## C.    The Instant Case

In *Wilson v. Sellers*, ⸺ U.S. ⸺, 138 S.Ct. 1188 (2018), the Supreme Court

held that, when a state court's adjudication on the merits – such as the First DCA's

*per curiam* opinion here -- has no reasoned opinion, a "federal court should 'look

through' the unexplained decision to the last related state-court decision that does

provide a relevant rationale.  It should then presume that the unexplained decision

adopted the same reasoning." *Id.* at 1192.  Here, the decision of the circuit court

denying mandamus, ECF Doc. 14-4, was the last state-court decision providing a relevant rationale.  In that order, the circuit court determined Gribben received the requisite due process because (1) he was provided advance notice of the charge against him on January 5, 2018, three days before the disciplinary hearing was to occur; (2) Gribben was afforded an opportunity to submit witness statements, to call witnesses and to present evidence and (3) Gribben was offered staff assistance and declined same.  The circuit court also determined there was sufficient evidence to find Gribben guilty based on Sgt. Epley's statement that he observed the Petitioner strike another inmate repeatedly with a closed fist towards the inmate's head and torso.  ECF Doc. 14-4 at 4-5.

The circuit court's adjudication of these claims was not contrary to clearly established federal law or based on an unreasonable application of the facts to the law.  As stated above, *Wolff* requires (1) advance notice of the charges – it is undisputed Gribben was notified of the charges three (3) days prior to his hearing; (2) an opportunity to call witnesses and present evidence – it is undisputed that this opportunity was afforded to Gribben, that he provided witness names to the investigator, statements were obtained and Gribben advised he had no evidence to present other than his own testimony (ECF Doc. 14-2 at 22); (3) a written statement of the evidence relied upon and the reasons – there is no dispute the panel's decision

and reasoning was documented (ECF Doc. 14-1 at 7). The panel's decision was also supported by "some evidence," namely, the statement from Sgt. Epley and the video of the incident showing Gribben punching Artis. *See Hartsfield v. Nichols*, 511 F. 3d 826, 831 (8th Cir. 2008) ("a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation").

Additionally, none of Gribben's grounds for relief demonstrate that the above reasoning was unreasonable or even incorrect. Gribben claims in Ground One that "[t]he prison disciplinary team interpreted the prison rules as precluding it from basing any 'not guilty' verdict on any inmate's testimony." ECF Doc. 4 at 5. This claim is belied by the record. Gribben himself admits that the presiding officer at the hearing told him why the panel found the way it did: "he believed my version of events but that the team was finding me guilty because a 'fight' entails mutual combat and the video, statement of facts in the D.R. and my statement showed me punching inmate Artis and him not punching back and that is not a 'fight' so it must be a 'battery.'" ECF Doc. 14-1 at 9. In other words, Gribben's testimony that he was punched by Artis and then "waited a few minutes" after Artis's punch before punching him back was believed and relied upon. The hearing panel's reasoning was that such a delay between the initial punch by Artis and the retaliation by

Gribben changed the event from a fight into a battery by Artis followed by another battery by Gribben "a few minutes" later. The statement from Sgt. Epley who observed Gribben punch Artis several times, Gribben's own statements of the events and the videotape of the incident provided more than, but at least, "some evidence" supporting the decision of the disciplinary hearing panel. *See Hill*, 472 U.S. at 455-56.

In Ground Two, Gribben claims he requested exculpatory testimony from the employee witnesses – that Artis had punched Gribben in his cell as shown by Gribben's subsequent black eye – but that the witnesses "refused to be witnesses on petitioner Gribben's behalf," depriving Gribben of "the exculpatory evidence those employees possessed." ECF Doc. 4 at 7. The record belies this claim as well. The hearing panel told Gribben they believed his version -- that Artis had hit him in the cell "minutes prior" to Gribben's retaliation in the day-room. Thus, any statement or testimony from prison employees about Gribben's black eye would have been cumulative and would not have altered the basis of the panel's decision, which was premised on the fact that there was no fight taking place at the time that Gribben punched Artis. Moreover, Gribben states he spoke to potential witnesses prior to the hearing and they told him that they submitted witness statements indicating they were not present at the time of the incident. ECF Doc. 14-1 at 9. Indeed, one witness

told Gribben he did not remember Gribben's eye being swollen. Thus, these witnesses' testimonies would not have been helpful to Gribben. *See* ECF Doc. 14-2 at 17-22 (statements from witnesses identified by Gribben advising they were not present or did not recall the incident).

Finally, in Ground Three, Gribben argues he was convicted of battery without the panel finding that the contact with Artis was unwanted. In other words, Gribben appears to be arguing that because Artis struck Gribben first, albeit at an earlier time, Gribben cannot be guilty of a battery. This claim is belied by Gribben's own admissions. He admitted that Artis wanted to fight Gribben in the cell, not in the day-room. Also, Gribben admitted that a few minutes had passed between Artis' punch and Gribben's retaliation outside the cell. Because of the delay and the re-initiation of the altercation by Gribben, there is "some evidence" that Artis did not consent to being repeatedly punched in the day-room. Gribben also argues that Artis was the initial aggressor and that under Florida law, "a defendant cannot be found guilty of battery for hitting an assailant back after being struck first." ECF Doc. 4 at 8. However, under Florida law, the initial aggressor defense only applies when one is being "attacked." *Cruz v. State*, 189 So. 3d 822, 831 (Fla. Dist. Ct. App. 2015) (quoting Fla. Stat. § 776.013(3) (2008)). Here, however, Gribben admits he was able to wait several minutes before restarting hostilities against Artis. Thus, "some

evidence" existed to support the finding that Gribben was no longer reacting to an attacker; he was initiating a battery.

In sum, the record is clear that Gribben received actual advanced notice of the charges against him, that he was able to introduce testimony from witnesses and documentary evidence at an impartial hearing, that he received a written explanation of the decision and the evidence and rationale upon which it was based, and that at least "some evidence" supported the findings of the disciplinary hearing panel. *See Wolff,* 418 U.S. at 563-66, and *Hill*, 472 U.S. at 455-56. Therefore, the circuit court's denial of the petition for writ of mandamus was not contrary to clearly established federal law or based on an unreasonable application of the facts to the law. *See* 28 U.S.C. § 2254(d).

### D. Evidentiary hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration,

the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.    That Petitioner's petition under 28 U.S.C. § 2254 be DENIED, without an evidentiary hearing;

2.    That a certificate of appealability be DENIED; and

3.    That the clerk close this matter.

At Pensacola, Florida, this 22nd day of August, 2019.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.